COMMONWEALTH *vs.* GEORGE B. ELIOT.

Essex. November 1, 1887. — January 7, 1888.

Present : MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Great Pond — Lease — Covenant — Town — Notice.*

Under the Pub. Sts. c. 91, § 13, providing that, before making a lease of a great pond, the commissioners on inland fisheries " shall appoint a time and place for a hearing upon the application therefor, and shall give notice thereof to every city or town within whose limits any part of the pond lies," no notice is necessary where the whole of the pond lies in the city or town making the application.

If a lease of a great pond is made to a town, under the Pub. Sts. c. 91, containing covenants to be performed by the town, and a provision that, in case of breach

of any of the covenants, the commissioners on inland fisheries may enter and expel the lessee, a breach of the covenants on the part of the lessee is not of itself evidence of an abandonment of the lease.

COMPLAINT, under the Pub. Sts. c. 91, § 27, alleging that the defendant, on December 23, 1885, at North Andover, "in a certain pond called the Great Pond, otherwise known as Lake Cochickewick, said pond being a body of water of more than twenty acres in area, and being wholly situated in said North Andover, the whole of said pond being then and there a place where useful fishes were then and there lawfully artificially cultivated and maintained, unlawfully did fish without the permission or consent of the inhabitants of the said North Andover, the said inhabitants being then and there the lessees and proprietors of said pond, and proprietors of all the fishes therein contained, under and by virtue of a lease of said pond, made to said inhabitants," by the Commonwealth.

Trial in the Superior Court, on appeal, before *Hammond*, J., who allowed a bill of exceptions, in substance as follows:

The government put in evidence a lease of said pond from the board of commissioners on inland fisheries to the inhabitants of North Andover, for the term of fifteen years from and including September 5, 1884, the date of the lease. The lease contained certain provisions, which are stated in the margin.*

---

* "And the said lessees hereby covenant with said Commonwealth, that they will pay said rent in manner aforesaid ; that they will not occupy more than one tenth part of the premises aforesaid with the enclosure and appliances necessary for the taking and cultivation of fishes; that they will not avail themselves of the privilege of this lease to the prejudice of any rights of individuals, or public rights, other than the taking and cultivation aforesaid; that they will so arrange their enclosures and appliances aforesaid as not to debar ingress to and egress from said premises at proper places and at proper times ; that they will not sell fishes for food at seasons when their capture is prohibited by law ; that they will allow said board of commissioners at all times to enter on said premises, and to take fishes for purposes connected with fish culture and scientific observation; that during the last year of the period embraced by this lease they will not take nor capture any useful fishes, nor suffer the same to be taken or captured within the limits of said premises; that they will observe and obey all the laws of said Commonwealth relating to inland fisheries.

"Provided always, and these presents are upon this condition, that in case of the breach of any of the covenants to be observed on the part of the

It appeared in evidence, from the records of the town clerk, that, on August 25, 1884, the inhabitants of said town, at a town meeting, and under an article in the warrant for said meeting, voted to lease said Great Pond for a term of years, and to instruct the selectmen to petition for said lease, and to do it without delay. There was no other record relating to said leasing of the pond, subsequent to this date, upon the records of the town clerk.

The government called one Frye as a witness, who was a selectman of said town in the year 1884. He testified that, as such selectman, and under said vote, he went to the chairman of the board of commissioners on inland fisheries, for the purpose of obtaining a lease from the Commonwealth to the inhabitants of North Andover of said Great Pond; that he had a paper with him, and had a conversation with one Brackett, who was then acting as commissioner on inland fisheries; that he received a notice from said Brackett, which he took with him, and made two copies, and posted the notices in three places in North Andover; that they were posted between three and five days of the date of the lease, which was the date of the hearing; that said notices had been lost, and that, generally, said notices stated that ap-

---

lessees, or in case the estate hereby created shall be taken from the lessees or its representatives by process of law, proceedings in bankruptcy, insolvency, or otherwise, the said board of commissioners or their successors may while the default or neglect continues, or at any time after such taking by process of law, without any notice or demand, enter on said premises, and expel and remove, forcibly if necessary, the said lessees and those claiming under them, and their effects.

" And these presents are upon the further condition, that all fishes artificially cultivated and maintained by said lessees within the limits of said premises, and not removed by them at the expiration of the last year of the period embraced by this lease, shall become the absolute property of said Commonwealth, and that said lessees shall use all reasonable efforts to thoroughly stock the waters of said pond with one of the species of fish commonly known as trout, land-locked salmon, or bass, keeping accurate records for the inspection of said board, and shall make a return of their doings to the commissioners on the first of October of each year, of the number and species of fish which they may place in or remove from the waters of said pond. And upon the further condition that said lessees shall make such regulations concerning the use of such pond and fishing therein as may be required by said commissioners. All regulations concerning the same shall be submitted to said commissioners, and be subject to their approval."

plication had been made by the inhabitants of North Andover for a lease of Great Pond, under the provisions of the Pub. Sts. c. 91, and that a hearing would be had at the State House in Boston upon the matter, on September 5, 1884; that nobody appeared in opposition to the lease; and that he then received said lease.

It appeared that, since said lease, the town had expended on account of it about $34, made up of a payment of $15, as the entire rental reserved by said lease, and certain sums for the obtaining and recording of said lease, car fare, &c., and certain sums for fees incurred in prosecutions instituted against persons fishing, since said lease, upon said pond. It appeared, upon cross-examination of said Frye, that, since said lease, the town had paid nothing for the stocking of said pond with either of the species of fish mentioned in said lease, nor for the purpose of artificially cultivating fish in said pond, nor for the erection of any appliances for so doing, and had done nothing, except as before stated, towards the artificial cultivation of fish of any species in said pond. Frye also testified that he did not know of any return being made in the year 1884 to the commissioners on inland fisheries, as provided in said lease. And the defendant introduced evidence from the report of the commissioners on inland fisheries, for the year ending December 31, 1886, that said town had made no such return up to that time.

This was all the evidence upon the matters embraced in the rulings asked for by the defendant, and in the rulings of the court. It did not appear whether the commissioners kept a record of their proceedings or not.

The defendant asked the judge to give several instructions to the jury, of which the following is the only one which need now be stated:

"4. In order to the validity of a lease of a great pond there must be an application by the lessees, a hearing upon that application, and notice of the hearing. And the hearing must be at a reasonable hour, and at a reasonable place, and there must be reasonable notice of the time and place for hearing."

The judge declined so to rule, and instructed the jury, "that, it being undisputed that the whole of said pond was within the limits of the town of North Andover, the notice of hearing

provided by the Pub. Sts. c. 91, § 13, was not necessary, and no notice was required; that no actual setting apart or occupancy of said pond by the town, for the purposes of said lease, was necessary to be proved in the case; and that there was no evidence to be submitted to the jury upon the question whether the town had abandoned the lease."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*W. S. Knox*, for the defendant.

*H. C. Bliss*, Assistant Attorney General, for the Commonwealth.

FIELD, J. The only exceptions argued are the exception to the refusal to give the fourth instruction requested, and the exception to the instruction "that there was no evidence to be submitted to the jury upon the question whether the town had abandoned the lease." The instruction of the court upon the fourth request was, "that, it being undisputed that the whole of said pond was within the limits of the town of North Andover, the notice of hearing provided by the Pub. Sts. c. 91, § 13, was not necessary, and no notice was required." The town of North Andover was the lessee. The Pub. Sts. c. 91, §§ 13, 14, are re-enactments of the St. of 1873, c. 195, and the St. of 1874, c. 135. Notice is required "to every city or town within whose limits any part of the pond lies," that the city or town may appear and be heard upon the application for a lease. But when a city or town within whose limits the whole of the pond lies makes the application for a lease, a notice to it would be unnecessary. The notice required is notice to a city or town in its corporate capacity, and notice to any person or any other body corporate is not required.

There was no evidence that the lease had been determined by the board of commissioners on inland fisheries for breach of any of the conditions contained in it, or that the estate created by the lease had been surrendered by the town, and this surrender accepted by the commissioners. The town was still in possession under the lease, and liable to pay the rent reserved, and to keep its covenants contained in the lease.

*Exceptions overruled.*